**ROB BONTA**
Attorney General of California
MICHAEL L. NEWMAN (CA Bar No. 222993)
THOMAS S. PATTERSON (CA Bar No. 202890)
Senior Assistant Attorneys General
ANYA M. BINSACCA (CA Bar No. 189613)
MARISSA MALOUFF (CA Bar No. 316046)
JAMES E. STANLEY (CA Bar No. 316288)
Supervising Deputy Attorney General
JESSE BASBAUM (CA Bar No. 273333)
JANE REILLEY (CA Bar No. 314766)
MEGHAN H. STRONG (CA Bar No. 324503)
BARBARA HORNE-PETERSDORF* (CA Bar No. 327738)
Deputy Attorneys General
  300 S. Spring St.
  Los Angeles, CA 90013
  Telephone: (213) 269-6667
  E-mail: Barbara.HornePetersdorf@doj.ca.gov
*Attorneys for State of California and Gavin Newsom,*
*in his Official Capacity as Governor of the State of California*

\* Application for Pro Hac Vice Pending

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| **STATE OF ILLINOIS,** *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>**DONALD J. TRUMP,** *et al.*,<br><br>                              Defendants. | Case No. **1:25-cv-12174**<br><br>**BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS** *AMICI CURIAE* **IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

**TABLE OF CONTENTS**

Introduction ........................................................................................................................................1

Identity and Interests of *Amicus Curiae* ..........................................................................................1

Argument ..........................................................................................................................................2

I.     California's Experience Illustrates the Irreparable Harm Caused by Defendants' Unlawful Deployment of Federalized Troops. ..................................................................2

        A.     Defendants' Unlawful Federalization Orders Irreparably Injure States' Sovereign Rights. ......................................................................................................3

        B.     Federalization and Deployment of National Guard Troops Severely Infringes States' Police Powers. ..................................................................................4

        C.     Deploying Federalized National Guard Troops Injures States' Interests in Maintaining Peace and Order in their Communities ..............................................5

        D.     Defendants' Federalization Orders Irreparably Harm States' Economies. ..............7

        E.     The Morale of States' National Guard Troops Suffer When They Are Federalized and Deployed Domestically. ...............................................................9

Conclusion .......................................................................................................................................9

# TABLE OF AUTHORITIES

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*
   458 U.S. 592 (1982) ................................................................................................................ 5

*Bredesen v. Rumsfeld*
   2005 U.S. Dist. LEXIS 34876 (M.D. Tenn. Sept. 7, 2005) ..................................................... 3

*Kentucky v. EPA*
   2023 WL 11871967 (6th Cir. July 25, 2023) ........................................................................... 4

*Printz v. United States*
   521 U.S. 898 (1997) ................................................................................................................ 3

*United States v. Morrison*
   529 U.S. 598 (2000) ................................................................................................................ 4

**STATUTES**

United States Code, Title 10 § 12406 ........................................................................................... 3

Posse Comitatus Act ...................................................................................................................... 7

**CONSTITUTIONAL PROVISIONS**

California Constitution
   Article V, § 7 ........................................................................................................................... 3

United States Constitution
   Tenth Amendment ................................................................................................................... 3
   Article I, § 8, cls. 15-16 ........................................................................................................... 3

**OTHER AUTHORITIES**

Army National Guard, Basic Training, https://tinyurl.com/23n4kveh (basic training for Army
   National Guard) ....................................................................................................................... 4

Branson-Potts & Do, *Veterans' Advocates Warn of Low Morale Amid L.A. Deployment*, L.A.
   Times (Sept. 11, 2025), https://tinyurl.com/yc8ymxse .............................................................. 9

*California's Private Sector Employment*, U.C. Merced Community & Labor Ctr. (Aug. 2025),
   https://tinyl.co/3cKl ................................................................................................................. 8

Cowan & Dwyer, *Federal Agents March Through L.A. Park, Spurring Local Outrage*, N.Y.
   Times (July 7, 2025), https://tinyurl.com/ye6dvrec ................................................................. 8

The Examination of Doctor Benjamin Franklin, Before an August Assembly, Relating to the Repeal of the Stamp Act, &c. (Feb. 13, 1766) ("Suppose a military force sent into America . . They will not find a rebellion; they may indeed make one."), https://tinyurl.com/577emuzh ................................................................................................6

Presidential Memorandum, Department of Defense Security for the Protection of Department of Homeland Security Functions (June 7, 2025), https://tinyl.co/3hFo .........................................2

Shawn Hubler, *Trump's National Guard Troops Are Questioning Their Mission in L.A.*, N.Y. Times (July 16, 2025), https://tinyurl.com/bd7v8ree..................................................................9

Watson & Weber, *What to Know About the Troops and Federal Agents in LA's MacArthur Park*, Associated Press (July 7, 2025), https://tinyurl.com/mvsjm34m ...............................................7

iv

BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS *AMICI CURIAE* ISO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (Case No. 1:25-cv-12174)

## INTRODUCTION

President Trump's unlawful federalization of Illinois' National Guard and deployment of Texas' federalized National Guard into Illinois is his latest attack on our nation's foundational tradition of keeping the military out of civilian affairs. Defendants' campaign to militarize America's cities began in California, where in early June, President Trump seized control of the State's National Guard troops and deployed them to conduct civilian law enforcement activities throughout Southern California. California has suffered continuous irreparable harm as a result of Defendants' federalization and deployment of National Guard troops into its communities, including harm to its sovereign interests and police powers, the physical and economic well-being of its residents, and the morale of its National Guard troops and their families. These same irreparable injuries will befall Illinois and Chicago if Defendants' illegal federalization orders are allowed to be carried out. This Court's intervention is necessary to prevent irreparable harm to Illinois and Chicago and to protect them from Defendants' dangerous, unprecedented, and unlawful experiment in militarized law enforcement.

## IDENTITY AND INTERESTS OF *AMICUS CURIAE*

As the first State to be subjected to Defendants' federalization and deployment of its National Guard troops without the consent of its Governor, California and Governor Newsom have a unique understanding of the harm caused by Defendants' unlawful federalization orders. The deployment of federalized National Guard troops in California continues today, as does the harm that California has endured to its sovereign interests and police powers, the physical and economic well-being of its residents, and the morale of its National Guard troops and their families.

Accordingly, California and Governor Newsom support Plaintiffs' efforts to restore control and command of Illinois' National Guard and prevent deployment of Texas' federalized

National Guard troops into Illinois and Chicago. California and Governor Newsom share their experience as a warning of the harms caused by the unlawful deployment of federalized National Guard troops.

## ARGUMENT

I. **CALIFORNIA'S EXPERIENCE ILLUSTRATES THE IRREPARABLE HARM CAUSED BY DEFENDANTS' UNLAWFUL DEPLOYMENT OF FEDERALIZED TROOPS.**

California's experience as the first State to be subjected to President Trump's deployment of the National Guard without its Governor's consent serves as a warning of the harm caused by a continuous federal military presence in a State. For nearly four months, federalized National Guard troops have been deployed in California's communities. In his June 7, 2025 Memorandum, issued in response to events that took place in Los Angeles on June 6 and 7, President Trump authorized Defense Secretary Hegseth to "call[] into Federal service . . . at least 2,000 National Guard personnel . . . for 60 days" or longer. Presidential Memorandum, Department of Defense Security for the Protection of Department of Homeland Security Functions (June 7, 2025), https://tinyl.co/3hFo. In the following days, Secretary Hegseth ordered the federalization of California's National Guard and deployed troops throughout Southern California for 60 days, through August 6, 2025. One day before the original federalization order was set to expire, Secretary Hegseth issued a new order deploying 300 federalized California National Guard troops for an additional 90 days, through November 5, 2025. DA Activation Order 004-25 12406, *Newsom, et al., v. Trump, et al.*, No. 3:25-cv-04870-CRB ("*Newsom v. Trump*") (Aug. 6, 2025) ECF No. 140-2.

Deploying California's National Guard has irreparably harmed the State and Governor Newsom in a manner likely to recur whenever the military is deployed domestically without the

consent of the State's Governor. These same irreparable injuries will be inflicted upon Plaintiffs absent this Court's intervention.

      A.     **Defendants' Unlawful Federalization Orders Irreparably Injure States' Sovereign Rights.**

*First*, Defendants' wresting control of the National Guard is a stark violation of States' sovereign rights and their Governors' roles as commander in chief of their Guards. *See* Cal. Const. art. V, § 7; *see Bredesen v. Rumsfeld*, 2005 U.S. Dist. LEXIS 34876, at * 33-34 (M.D. Tenn. Sept. 7, 2005) (finding that Governor of Tennessee "made a strong showing of immediate and irreparable harm" to his powers as commander in chief of the Tennessee Air National Guard based on Secretary of Defense's recommendation to remove eight aircraft from the National Guard resulting "in the loss of hundreds of National Guard positions in the State of Tennessee"). Indeed, where Defendants' federalization of National Guard troops is not authorized by 10 U.S.C. section 12406, Defendants have unconstitutionally commandeered members of States' forces in contravention of the Constitution's Militia Clauses, *see* U.S. Const. art. I, § 8, cls. 15-16, and the Tenth Amendment, *see generally Printz v. United States*, 521 U.S. 898, 930 (1997). States plainly suffer irreparable harm when their own militia is depleted to serve an unlawful federal mission—including because those troops are diverted from the critical work they perform for the State. *See, e.g.,* Eck Decl., ¶¶ 47-50, *Newsom v. Trump* (June 10, 2025) ECF No. 8-3; Supp. Eck Decl., ¶¶ 3-15, *Newsom v. Trump* (June 12, 2025) ECF No. 39-2; Brief of Bipartisan Former Governors as *Amici Curiae* in Support of Plaintiffs-Appellees, *Newsom v. Trump*, No. 25-3727 (9th Circ. Sept. 9, 2025) Dkt. 69.1 at 10-13; Brief of Amici States as *Amici Curiae* in Support of Plaintiff-Appellees' Answering Brief, *Newsom v. Trump*, No. 25-3727 (9th Cir. Sept. 9, 2025) Dkt. 93.1 at 22-30. Additionally, federalized troops usurping traditional law enforcement functions undermines States' police powers guaranteed by the Tenth Amendment.

3

BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS *AMICI CURIAE* ISO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (Case No. 1:25-cv-12174)

*United States v. Morrison*, 529 U.S. 598, 618-19 (2000) (the reservation of police powers to the States is "one of the few principles that has been consistent since the [Constitution] was adopted"). Violations of sovereignty are irreparable injuries because they "cannot be economically quantified, and thus cannot be monetarily redressed." *Kentucky v. EPA*, 2023 WL 11871967, at *4 (6th Cir. July 25, 2023) (quoting *Kentucky v. Biden*, 23 F.4th 585, 611-12 n.19 (6th Cir. 2022)). As is the case for California and Governor Newsom, Defendants' intrusion into Illinois' sovereignty and police power interferes with the constitutional balance of power between the federal and state governments.

      **B.    Federalization and Deployment of National Guard Troops Severely Infringes States' Police Powers.**

*Second*, mobilizing National Guard units to fill roles traditionally held by local law enforcement harms the State's ability to manage law enforcement operations and protect public safety. National Guard troops receive training in how to be a soldier—rather than training in civilian law enforcement matters such as criminal procedure, civil rights, and de-escalation—and they are expected to follow that training when called into military duty. *See* Army National Guard, Basic Training, https://tinyurl.com/23n4kveh (basic training for Army National Guard); Amici Curiae Brief of Former U.S. Army and Navy Secretaries and Retired Four-Star Admirals and Generals, 7, *Newsom v. Trump* (June 11, 2025) ECF No. 31-1 ("Personnel in the U.S. military . . . do not receive extensive training on how to operate safely and effectively in the context of domestic law enforcement. Our longstanding tradition of entrusting domestic law enforcement to local, state, and federal law enforcement personnel has . . . allowed the U.S. military to remain focused on its core mission.").

On the other hand, state and local law enforcement agencies have expertise, extensive training, and processes in place for responding to crowd control, civil disturbances, or other

4

BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS *AMICI CURIAE* ISO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (Case No. 1:25-cv-12174)

civilian law enforcement functions. *See* Decl. of Daniel Randolph ¶¶ 7-9, 17, 20, 23, *Newsom v. Trump* (June 19, 2025) ECF No. 87-4 (describing Los Angeles Police Department's "experience in dealing with spontaneous protests, such as the mass George Floyd protests" in May and June 2020 and explaining that it "has since trained its personnel on updated crowd management and crowd control techniques in order to facilitate peaceful protests and attempt to de-escalate tense, hostile and potentially violent situations"); Decl. of Sean Duryee ¶¶ 5, 6, 8, 9, *Newsom v. Trump* (June 19, 2025) ECF No. 87-3 (explaining that California Highway Patrol, along with local law enforcement, adequately managed and responded to the June 14, 2025 "No Kings Protest" without the Guard). The presence of the Guard poses a challenge to law enforcement because there are difficulties maintaining clear communications and unified command where National Guard members "are not familiar with the rules of engagement, the laws of arrest, or rules and policy regarding the use of force in policing and domestic law enforcement." Decl. of Daniel Randolph ¶ 20, *Newsom v. Trump* (June 19, 2025) ECF No. 87-4. Not only are the federalized troops not appropriately prepared to serve in a civilian law enforcement capacity, their presence taxes local law enforcement and interferes with their ability to protect the public.

  **C. Deploying Federalized National Guard Troops Injures States' Interests in Maintaining Peace and Order in their Communities.**

*Third*, deploying troops escalates tensions in communities and harms States' interests in maintaining stable communities. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) (recognizing a state "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general"). Deploying federalized National Guard troops domestically sows chaos and fear, and can spur unrest rather than solve problems. It is no surprise that deploying military troops into communities escalates tensions, as the domestic use of the military has long been recognized as antithetical to American values.

5

*See, e.g.*, The Examination of Doctor Benjamin Franklin, Before an August Assembly, Relating to the Repeal of the Stamp Act, &c. (Feb. 13, 1766) ("Suppose a military force sent into America . . . They will not find a rebellion; they may indeed make one."), https://tinyurl.com/577emuzh.

California's communities experienced these injuries firsthand following Defendants' federalization and deployment of California's National Guard. When troops were initially mobilized to Los Angeles, tensions heightened and arrests increased, necessitating additional resources from the California Highway Patrol. Decl. of Joseph Zizi ¶ 12, *Newsom v. Trump* (June 16, 2025) ECF No. 77-3. And once federalized National Guard troops began participating in immigration enforcement raids throughout Southern California, news coverage of the troops' presence at one enforcement operation in Carpinteria, California sparked protests at a separate enforcement operation in Camarillo, California. *See* Trial Tr. 130:2-4, *Newsom v. Trump* (Aug. 11, 2025) ECF No. 162. Rather than quelling civil unrest, the presence of military troops on the streets of Los Angeles only inflamed protests further. Decl. of Brian Olmstead ¶¶ 12-14, *Newsom v. Trump* (June 10, 2025) ECF No. 8-2.

To the extent Defendants argue that the number of troops deployed in Illinois undermines any injury to the community those troops may cause, this argument fundamentally misunderstands the harms that occur the moment an armed military force of any size is deployed domestically. Whether the troops number in handfuls, hundreds, or thousands, their presence inflames tensions in communities when residents perceive an unwanted, militarized police force in their community. Moreover, the 300 troops that Defendants are attempting to federalize and deploy in Illinois (not to mention the 400 additional federalized National Guard from Texas[1]) are

---

[1] Deploying Texas' federalized National Guard to Illinois is a uniquely egregious contravention of the historical underpinnings of the Militia Clause. The issue of whether a standing army or the militia would serve as the nation's principal force was heavily debated at the Constitutional

6

BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS *AMICI CURIAE* ISO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (Case No. 1:25-cv-12174)

more than enough to escalate tensions or violate the Posse Comitatus Act. As a reference point, a force of 300 soldiers is nearly four times greater than the approximately 80 soldiers who participated in the widely publicized Department of Homeland Security operation in Los Angeles' MacArthur Park, titled Operation Excalibur, which was intended "to demonstrate, through a show of presence, the capacity and freedom of maneuver of federal law enforcement within the Los Angeles Joint Operations Area." Trial Tr. 35:19-23, 37:15-18, *Newsom v. Trump* (Aug. 11, 2025) ECF No. 162. There, Defendants deployed the federalized National Guard troops, "dozens of federal officers," and "17 Humvees [and] four tactical vehicles" to a Los Angeles park in a densely populated neighborhood. Watson & Weber, *What to Know About the Troops and Federal Agents in LA's MacArthur Park*, Associated Press (July 7, 2025), https://tinyurl.com/mvsjm34m. Accordingly, the unlawful presence of any number of federalized National Guard troops escalates tensions in communities and harms the States where the deployments occur.

### D. Defendants' Federalization Orders Irreparably Harm States' Economies.

*Fourth*, the militarized presence of National Guard troops harms States' economies by stoking fear and causing the public to stay home, fail to report for work, and avoid areas where the military is deployed. For example, City of Los Angeles Mayor Karen Bass described the

---

Convention and it was ultimately the fact that the states' militias would be composed of citizen-soldiers serving amongst their own communities that quieted fears of a standing federal army. *See* THE FEDERALIST NO. 29, at 144 (Alexander Hamilton) (Ian Shapiro ed., 2009) ("Where . . . are our fears to end if we may not trust . . . our neighbors, our fellow-citizens? What shadow of danger can there be from men who are daily mingling with the rest of their countrymen and who participate with them in the same feelings, sentiments, habits and interests?"); THE FEDERALIST NO. 45, at 236–37 (James Madison) (Ian Shapiro ed., 2009) ("[M]ilitia . . . intermixed, and having particular acquaintance with every class and circle of people, must exceed, beyond all proportion, both in number and influence, those of every description who will be employed in the administration of the federal system.").

scene of Operation Excalibur as looking like "a city under siege, under armed occupation" and how "a city looks before a coup."  Cowan & Dwyer, *Federal Agents March Through L.A. Park, Spurring Local Outrage*, N.Y. Times (July 7, 2025), https://tinyurl.com/ye6dvrec (noting that a convenience store owner closed his store near MacArthur Park due to the show of military force).  An August 2025 study reflected that the number of people reporting to work in California's private sector decreased by 3.1% in June 2025 and by 4.9% in July 2025, directly coinciding with the deployment of troops to Southern California and their participation in immigration enforcement actions.  Orozco Flores et al., *The Effects of Recent Federal Immigration Enforcement on California's Private Sector Employment*, U.C. Merced Community & Labor Ctr. (Aug. 2025), https://tinyl.co/3cKl.  The ongoing military presence in downtown Los Angeles has sharply decreased consumer activity and harmed businesses so severely that some may never recover.  Decl. of Carlos A. Singer ¶¶ 7-10, *Newsom v. Trump* (Sept. 2, 2025) ECF No. 183-3; Decl. of Oliver Alpuche ¶ 10, *Newsom v. Trump* (Sept. 2, 2025) ECF No. 183-6 (noting a 40% drop in business for a downtown Los Angeles business owner since the federalization began).  Since the deployment, participation in community events and festivals has declined, and normally vibrant areas are empty.  Decl. of Oliver Alpuche ¶¶ 4, 13-14, *Newsom v. Trump* (Sept. 2, 2025) ECF No. 183-6 (reporting 2,000 fewer attendees than in prior years at the annual DTLA Proud Festival).  The result is less income for businesses and less tax revenue for the State.  The economies of Illinois and Chicago will similarly suffer as a result of Defendants' unlawful federalization orders.

//

//

### E. The Morale of States' National Guard Troops Suffer When They Are Federalized and Deployed Domestically.

*Fifth*, the morale of National Guard troops and their families are depleted when troops are deployed as a police force on the streets of their own communities. Branson-Potts & Do, *Veterans' Advocates Warn of Low Morale Amid L.A. Deployment*, L.A. Times (Sept. 11, 2025), https://tinyurl.com/yc8ymxse; Shawn Hubler, *Trump's National Guard Troops Are Questioning Their Mission in L.A.*, N.Y. Times (July 16, 2025), https://tinyurl.com/bd7v8ree; Decl. of Brandi Jones ¶ 19, *Newsom v. Trump* (Sept. 2, 2025) ECF No. 183-7 (describing negative impact of deployment to Los Angeles on morale of military families). This strain on morale further threatens the readiness of States' National Guard troops, upon whom States routinely rely to carry out critical state functions, including responding to natural disasters and other emergencies.

The harms California and Governor Newsom have endured as a result of Defendants' federalization of the California National Guard lay bare the consequences of deploying the military without the Governor's consent and serve as illustrations of the harm that Illinois and Chicago face and will face should Defendants not be restrained from federalizing and deploying National Guard troops into their communities.

## CONCLUSION

Plaintiffs' Motion for a Temporary Restraining Order should be granted.

| | |
|---|---|
| October 7, 2025 | Respectfully submitted,<br><br>**ROB BONTA**<br>Attorney General of California<br>MICHAEL L. NEWMAN<br>THOMAS S. PATTERSON<br>Senior Assistant Attorneys General<br>ANYA M. BINSACCA<br>MARISSA MALOUFF<br>JAMES E. STANLEY<br>Supervising Deputy Attorney General<br>JESSE BASBAUM<br>MEGHAN STRONG<br>JANE REILLEY<br>Deputy Attorney General<br><br>*/s/ Barbara Horne-Petersdorf*<br>BARBARA HORNE-PETERSDORF<br>Deputy Attorney General<br>  300 S. Spring St.<br>  Los Angeles, CA 90013<br>  Telephone: (213) 269-6667<br>  E-mail: Barbara.HornePetersdorf@doj.ca.gov |