UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS, a sovereign state; and the CITY OF CHICAGO, an Illinois municipal corporation,<br><br>        Plaintiffs,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; DEPARTMENT OF DEFENSE; PETER B. HEGSETH, in his official capacity as Secretary of the Department of Defense; UNITED STATES ARMY; DANIEL P. DRISCOLL, in his official capacity as Secretary of the Army,<br><br>        Defendants. | Case No. 25-cv-12174<br><br>Judge April M. Perry<br><br>Mag. Judge Jeffrey T. Gilbert |

**JOINT STATUS REPORT**

The parties submit this joint status report as a follow-up to their December 24, 2025 joint status report, and the Court's December 26, 2025 minute entry. (ECF 110, 111.) On January 7, 2025, the parties conferred by videoconference regarding the overall status of this litigation, as well as discovery and scheduling matters. During their meet-and-confer, the parties exchanged initial views on potential pathways to expeditiously resolve this litigation given the procedural history to date and concurrent Seventh Circuit proceedings, which remain ongoing. With no consensus at this point, the parties provide their respective positions on the future course of this litigation below. They also jointly propose that they submit another status report on or before January 16, 2026.

**Plaintiffs:** Plaintiffs believe that this case can and should promptly be decided in their favor as a matter of law based on the Supreme Court's December 23, 2025 ruling denying Defendants' request to stay this Court's temporary restraining order. *See Trump v. Illinois*, No. 25A443, 607 U.S. ----, 2025 WL 3715211 (Dec. 23, 2025). As the Court is aware, the core claim in this case asserts that the President's attempts to federalize and deploy members of the Illinois, Texas, and California National Guard in Illinois beginning on or about October 4, 2025, exceeded his authority under 10 U.S.C. § 12406. Although reflective of the preliminary procedural posture in which it considered the question, the Supreme Court's December 23 ruling effectively resolves as a matter of law whether the federalization and deployment orders at issue in this case were lawful. They were not.

Specifically, in its published opinion denying Defendants' stay request, the Supreme Court "conclude[d] that the term 'regular forces' in § 12406(3) likely refers to the regular forces of the United States military," which "means that to call the Guard into active federal service under § 12406(3), the President must be 'unable' *with the regular military* 'to execute the laws of the United States.'" *Id.*, slip op. at 2 (emphasis in original). And "[b]ecause the statute requires an assessment of the military's ability to execute the laws, it likely applies only where the military could legally execute the laws." *Id*. Those circumstances, the Court explained, are "exceptional," given that, under the Posse Comitatus Act, "the military is prohibited from 'execut[ing] the laws' 'except in cases and under circumstances expressly authorized by the Constitution or Act of Congress.'" *Id*. (quoting 18 U.S.C. § 1385) (alterations in original). Accordingly, "before the President can federalize the Guard under § 12406(3), he likely must have statutory or constitutional authority to execute the laws with the regular military and must be 'unable' with those forces to perform that function." *Id*.

And at this stage, the Supreme Court concluded, "the Government has failed to identify a source of authority that would allow the military to execute the laws in Illinois." *Id*. Specifically, the President has "not invoked a statute that provides an exception to the Posse Comitatus Act," and his reliance on "inherent constitutional authority" was misplaced. *Id.* at 2-3. Indeed, while the President claims that this inherent authority "allows him to use the military to protect federal personnel and property," it also asserts "that performing such protective functions does not constitute 'executing the laws' within the meaning of the Posse Comitatus Act." *Id.* at 3 (cleaned up). And if that is true, "it is hard to see how performing those functions could constitute 'executing the laws' under § 12406(3)." *Id*. (cleaned up). Therefore, the Court concluded, "the Government has not carried its burden to show that § 12406(3) permits the President to federalize the Guard in the exercise of inherent authority to protect federal personnel and property in Illinois." *Id*. In denying the application, the Court also necessarily rejected Defendants' arguments under Section 12406(2), which requires "a rebellion or danger of rebellion against the authority of the Government of the United States[.]" 10 U.S.C. § 12406(2).

Plaintiffs' reading of the Supreme Court's December 23 ruling is that it creates a straightforward path to judgment as a matter of law in their favor. As a factual matter, there is no dispute that Defendants have not attempted to deploy the "regular forces"—i.e., the regular military—to execute federal law in Illinois and been "unable" to do so. 10 U.S.C. § 12406(3). Defendants also have not claimed (nor could they) that the "exceptional" circumstances necessary to use the regular military for domestic law enforcement exist in Illinois. Given the absence of this statutory prerequisite necessary to invoke Section 12406(3), Defendants' orders under that statute exceeded the President's authority and must be declared invalid. Plaintiffs are prepared to proceed

3

with filing a motion for summary judgment on these grounds if necessary and communicated as much to Defendants in their January 7 meet-and-confer.

At the same time, Plaintiffs also indicated their willingness to engage in discussions regarding a negotiated resolution of this litigation that would preserve party and judicial resources by avoiding contested dispositive motion practice and further appellate proceedings. Plaintiffs' willingness to engage in such discussions is in part reflective of a change in the status quo: although Defendants have not formally communicated it directly to Plaintiffs or their counsel, Plaintiffs understand that, as of this filing, the National Guard members federalized under the challenged orders are no longer present in Illinois. Specifically, Plaintiffs understand that: members of the Texas and California National Guard departed Illinois last month; some members of the Illinois National Guard who were called forth into federal service have been demobilized and allowed to return home; and approximately 195 members of the Illinois National Guard are presently at Fort Bragg, North Carolina completing the demobilization process, which is expected to conclude by January 16, 2026.

However, Plaintiffs have not received and are not otherwise aware of a written order rescinding the October 4, 2025 federalization and deployment orders challenged in the complaint, or the subsequent orders issued as recently as early December 2025 extending the federalization of the Illinois National Guard through April 15, 2026. Plaintiffs are also aware of the President's December 31, 2025 social media post in which he announced the removal of the National Guard from Chicago, but further stated: "We will come back, perhaps in a much different and stronger form, when crime begins to soar again – Only a question of time!"[1] As Seventh Circuit and Supreme Court precedent make clear: "Voluntary cessation of the contested conduct makes

---

[1] @realDonald Trump, Truth Social, Dec. 31, 2025, 2:55 p.m., available at: https://truthsocial.com/@realDonaldTrump/posts/115816171466225987 (last visited Jan. 9, 2026).

4

litigation moot only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Plaintiffs remain open to discussing a negotiated resolution, such as through a consent judgment, that would provide them adequate assurance that the attempted federalization and deployment of the National Guard in Illinois challenged in this litigation is over. While Plaintiffs' counsel and Defendants' trial counsel had an encouraging preliminary discussion to that end on January 7, Plaintiffs' understanding is that Defendants' counsel await direction from their chain of command to substantively advance those discussions. Plaintiffs further understand from Defendants that obtaining the necessary direction and authority requires additional time, and Defendants' preference is for a 30-day extension of current deadlines. Plaintiffs object to this delay, particularly in light of the speed with which this case arose—with the initial federalization orders occurring the morning of October 4 and troops arriving from Texas in Illinois the afternoon of October 6.

To avoid unnecessary delays in resolving this litigation, Plaintiffs believe that a status conference with the Court would be helpful. At the conference, the parties can discuss with the Court a prompt path to resolving this case—whether through a motion for summary judgment or a negotiated resolution. Plaintiffs do not object to Defendants' counsel appearing remotely.

**Defendants:**

During the parties' January 7, 2026, meet and confer, Defendants explained that they are continuing to evaluate the implications of the Supreme Court's recent stay decision, which potentially affects not just litigation in this case but also cases pending in the U.S. District Court

5

for the District of Oregon, the U.S. District Court for the Northern District of California, and the U.S. Courts of Appeals for the Seventh and Ninth Circuits. In the meantime, Defendants are continuing to proceed with the case. Indeed, during the same meet and confer, the parties engaged in a productive discussion to resolve their differences regarding the proposed protective order. Nevertheless, to allow sufficient time for Defendants to determine the path forward across the various district court and appellate proceedings, Defendants believe it is appropriate to extend the existing deadlines (including the deadline to respond to the complaint) by one month. Plaintiffs oppose this request.

      Defendants' request for an extension is not for purposes of delay. Rather, undersigned counsel must coordinate with client agencies and within the U.S. Department of Justice to formulate a consistent approach. There is no prejudice to Plaintiffs given their acknowledgment that National Guard troops are no longer deployed in Illinois. Moreover, an injunction remains in place until the conclusion of this litigation. Defendants, therefore, seek a one-month extension of the existing discovery deadlines and an extension of the deadline to respond to the complaint. Defendants intend to move for such relief if necessary. Defendants also believe that extending discovery deadlines will facilitate more productive discussions between the parties by allowing them to focus on a potential resolution rather than on discovery and related disputes.

      Defendants oppose Plaintiffs' request for a status conference at this time. In Defendants' view, a status conference would not accelerate their internal decision-making process or facilitate an earlier resolution of the case. It would be more productive to allow Defendants to focus their attention on expeditiously reaching a decision about the path forward, including determining whether a negotiated resolution of this case without further litigation is possible.

Date: January 9, 2026

Respectfully submitted,

| | |
|---|---|
| KWAME RAOUL<br>Attorney General of Illinois | BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division |
| By: /s/ Christopher G. Wells<br>CARA HENDRICKSON<br>Executive Deputy Attorney General<br>CHRISTOPHER WELLS<br>Division Chief, Public Interest Division<br>SARAH J. NORTH<br>Deputy Division Chief, Public Interest Division<br>KATHARINE ROLLER<br>Complex Litigation Counsel<br>GRETCHEN HELFRICH<br>Deputy Chief, Special Litigation Burean<br>KATHERINE PANNELLA<br>Senior Assistant Attorney General<br>SHERIEF GABER<br>MICHAEL TRESNOWSKI<br>Assistant Attorneys General<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>31st Floor<br>Chicago, Illinois 60603<br>(312) 814-3000<br>Cara.Hendrickson@ilag.gov<br>Christopher.Wells@ilag.gov<br>Sarah.North@ilag.gov<br>Katharine.Roller@ilag.gov<br>Gretchen.Helfrich@ilag.gov<br>Katherine.Pannella@ilag.gov<br>Sherief.Gaber@ilag.gov<br>Michael.Tresnowski@ilag.gov | ERIC J. HAMILTON<br>Deputy Assistant Attorney General<br>Federal Programs Branch<br><br>JEAN LIN<br>Special Litigation Counsel<br><br>/s/ Kian K. Azimpoor<br>CHRISTOPHER D. EDELMAN<br>(DC Bar No. 1033486)<br>Senior Counsel<br>BENJAMIN S. KURLAND<br>(DC Bar No. 1617521)<br>JODY D. LOWENSTEIN<br>(MT Bar No. 55816869)<br>KATHLEEN C. JACOBS<br>(TX Bar No. 24091154)<br>J. STEPHEN TAGERT<br>(VA Bar No. 99641)<br>JOHN BAILEY<br>MICHAEL J. GERARDI<br>KIAN K. AZIMPOOR<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, N.W.<br>Washington, DC 20005<br>Tel.: (202) 598-0860<br>Email: kian.k.azimpoor@usdoj.gov |
| *Counsel for the State of Illinois* | *Attorneys for Defendants* |

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: /s/Stephen J. Kane
STEPHEN J. KANE

CHELSEY B. METCALF
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
312-744-6934
stephen.kane@cityofchicago.org
chelsey.metcalf@cityofchicago.org
Counsel for the City of Chicago

*Counsel for the City of Chicago*