**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| STATE OF ILLINOIS and the CITY OF CHICAGO, | Case No. 1:25-cv-12174 |
| *Plaintiffs,* | **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)** |
| v. | |
| DONALD J. TRUMP, *et al.*, in their official capacities, | |
| *Defendants.* | |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................2

LEGAL STANDARD ..........................................................................................................4

ARGUMENT ........................................................................................................................5

I.      THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE CASE IS
        MOOT. .......................................................................................................................5

        A.      The Case Is Moot Because No Members of the Illinois National
                Guard Remain Federalized, and No Members of Any State's National
                Guard Remain Deployed in Illinois, for the Federal Protection
                Mission. ..........................................................................................................5

        B.      No Exception to Mootness Applies. ............................................................7

                1.      The "capable of repetition, yet evading review" exception is
                        inapplicable. ......................................................................................7

                2.      The voluntary cessation exception is inapplicable. ...................10

CONCLUSION ....................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Alaska v. Dep't of Agric.*,
  17 F.4th 1224 (D.C. Cir. 2021) ...................................................................................10

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ................................................................................................*passim*

*Alvarez v. Smith*,
  558 U.S. 87 (2009) ...........................................................................................................5

*Arizonans for Official Eng. v. Arizona*,
  520 U.S. 43 (1997) ...........................................................................................................4

*Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*,
  928 F.3d 670 (7th Cir. 2019) ..........................................................................................6

*Brach v. Newsom*,
  38 F.4th 6 (9th Cir. 2022) ...................................................................................9, 10, 13

*Central Soya Co. v. Consolidated Rail Corp.*,
  614 F.2d 684 (7th Cir. 1980) ..................................................................................8, 9, 10

*Chafin v. Chafin*,
  568 U.S. 165 (2013) .....................................................................................................5, 6

*Church of Scientology v. United States*,
  506 U.S. 9 (1992) .............................................................................................................5

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ...........................................................................................................7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .........................................................................................................7

*Consol. Paving, Inc. v. Cnty. of Peoria*,
  No. 10-CV-1045, 2012 WL 13001935 (C.D. Ill. Aug. 28, 2012) .................................4

*FBI v. Fikre*,
  601 U.S. 234 (2024) ..............................................................................................6, 10, 13

*Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*,
  326 F.3d 924 (7th Cir. 2003) .........................................................................................10

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...................................................................................4, 7, 10, 11

*Honig v. Students of Cal. Sch. for the Blind*,
471 U.S. 148 (1985)...................................................................................6

*Illinois v. Trump*,
155 F.4th 929 (7th Cir. 2025)...................................................................12

*Long v. Shorebank Dev. Corp.*,
182 F.3d 548 (7th Cir. 1999)....................................................................4

*Mills v. Green*,
159 U.S. 651 (1895)...................................................................................5

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*,
708 F.3d 921 (7th Cir. 2013)....................................................................5, 7

*Minnesota Humane Soc'y v. Clark*,
184 F.3d 795 (8th Cir. 1999)....................................................................8

*Murphy v. Hunt*,
455 U.S. 478 (1982)...................................................................................8

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025)..............................................................................11

*O'Shea v. Littleton*,
414 U.S. 488 (1974)...................................................................................7

*Princeton University v. Schmid*,
455 U.S. 100 (1982)...................................................................................5, 12

*Protestant Mem'l Med. Ctr., Inc. v. Maram*,
471 F.3d 724 (7th Cir. 2006)....................................................................8

*Ragsdale v. Turnock*,
841 F.2d 1358 (7th Cir. 1988)..................................................................10

*Ramos v. Louisiana*,
590 U.S. 83 (2020)....................................................................................11

*Samma v. Dep't of Def.*,
136 F.4th 1108 (D.C. Cir. 2025)...............................................................10, 11

*Spencer v. Kemna*,
523 U.S. 1 (1998)......................................................................................7

iii

*St. John's United Church of Christ v. City of Chicago,*
  502 F.3d 616 (7th Cir. 2007)................................................................4

*Storer v. Brown,*
  415 U.S. 724 (1974)........................................................................8

*Super Tire Engineering Co. v. McCorkle,*
  416 U.S. 115 (1974)........................................................................8

*Trump v. Boyle,*
  145 S. Ct. 2653 (2025)....................................................................11

*Trump v. Illinois,*
  146 S. Ct. 432 (2025)............................................................1, 3, 12, 13

*United States v. Sanchez-Gomez,*
  584 U.S. 381 (2018)........................................................................4

*United States v. W. T. Grant Co.,*
  345 U.S. 629 (1953)......................................................................11

*Watchdogs v. U.S. Army Corps of Eng'rs,*
  No. 22-CV-1386, 2023 WL 12144748 (C.D. Ill. June 5, 2023)................4

*Weinstein v. Bradford,*
  423 U.S. 147 (1975)........................................................................8

**U.S. Constitution**

U.S. Const. art. III, § 2, cl. 1 ..............................................................4

**U.S. Code**

10 U.S.C. § 12406 ...................................................................*passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ......................................4, 13

**Other Authorities**

Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 31, 2025, 3:55 p.m.),
  https://truthsocial.com/@realDonaldTrump/posts/115816171466225987,
  https://perma.cc/4T2D-8JCR............................................3, 9, 13

USNORTHCOM, Federal Protection Mission,
  https://www.northcom.mil/Missions/Homeland-Defense/Federal-Protection-Mission/,
  https://perma.cc/5FZ8-Z8SN..........................................4, 9, 11

**INTRODUCTION**

Plaintiffs filed this action to end Defendants' federalization and deployment of the Illinois National Guard, and the deployment of any other state's National Guard in Illinois, under the orders issued on October 4 and 5, 2025. That has now happened. It is undisputed that all federalized Illinois National Guard troops have been de-mobilized, all National Guard troops from other states have been withdrawn from Illinois, and no National Guard troops remain deployed in the state for the Federal Protection Mission. Because of those developments, the case is moot.

In addition, no federalization or deployment will recur under the challenged orders. In refusing to grant a stay of this Court's October 9, 2025 order, the Supreme Court agreed with this Court that the term "regular forces" in 10 U.S.C. § 12406(3)—which authorizes the President to federalize members of the Guard if he is "'unable with the regular forces to execute the laws of the United States'"—"likely refers to the regular forces of the United States military." *Trump v. Illinois*, 146 S. Ct. 432, 434 (2025) (quoting 10 U.S.C. § 12406(3)). Without "an assessment of the military's ability to execute the laws," including the "exceptional" circumstances required for such execution, the Supreme Court held that "at least in this posture, the Government has not carried its burden to show that § 12406(3) permits the President to federalize the Guard" in Illinois. *Id.* This reasoning carries precedential weight for lower courts, and thus, there is no reasonable expectation that Defendants will again federalize or deploy National Guard troops under the challenged orders. Indeed, Defendants demobilized the Illinois National Guard and withdrew all National Guard troops from Illinois. The Court should thus dismiss the Complaint for lack of subject matter jurisdiction.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Due to escalating violence against federal law enforcement conducting immigration enforcement operations in Illinois in late September and early October 2025, the President issued a memorandum on October 4, 2025, invoking 10 U.S.C. § 12406 and calling at least 300 members of the Illinois National Guard into federal service to protect federal personnel and property, executing federal law in Illinois, unless the governor of Illinois consented to a federally funded mobilization under Title 32 of the U.S. Code. *See* Compl. ¶¶ 100-26, ECF No. 1; Oct. 4, 2025, Presidential Memo, ECF No. 62-1, Ex. C. That same day, upon the governor of Illinois's refusal, the Secretary of War ordered the deployment of the Illinois National Guard under Title 10 of the U.S. Code. Compl. ¶¶ 128-32; Oct. 4, 2025, SoW Memo, ECF No. 62-1, Ex. F. The next day, the Secretary further mobilized 400 members of the Texas National Guard to perform federal protection missions where needed, including in the cities of Portland and Chicago. Compl. ¶¶ 133-35; SoW Oct. 5, 2025, Memo, ECF No. 62-1, Ex. G.

Plaintiffs filed their Complaint on October 6, 2025, asserting nine claims for relief and seeking declaratory and injunctive relief, *see generally* Compl., and simultaneously moved for a temporary restraining order ("TRO") and preliminary injunction. Pls.' Mot. for TRO & Prelim. Inj., ECF No. 3. All nine claims for relief arise from the same challenged conduct: the federalization and deployment of the Illinois National Guard and the deployment of Guardsmen from other states to Illinois, pursuant to Secretary Hegseth's October 4 and October 5 orders. *See* Compl. ¶¶ 1-4, 211-76.

On October 9, the Court issued a TRO, enjoining the federalization and deployment of the National Guard within Illinois. Order, ECF No. 67; *see also* Opinion and Order, ECF No. 70. The Court held, among other things, that "regular forces" in § 12406(3) means "the soldiers and officers regularly enlisted" in the standing military. ECF No. 70 at 53. Defendants appealed, and the Seventh Circuit administratively stayed the Court's injunction as to the federalization, but not the deployment,

2

of the National Guard within Illinois. 7th Cir. Order (ECF No. 80). Upon the parties' agreement, this Court extended the TRO until final judgment in the case. Agreed Extension of TRO (ECF No. 98).

In the meantime, Defendants applied to the Supreme Court for a stay pending appeal and an immediate administrative stay of this Court's October 9 order. On December 23, the Supreme Court denied the Government's stay application, holding that "the term 'regular forces' in § 12406(3) likely refers to the regular forces of the United States military." *See generally Trump*, 146 S. Ct. at 434. As the Supreme Court explained, that "interpretation means that to call the Guard into active federal service under § 12406(3), the President must be 'unable' *with the regular military* 'to execute the laws of the United States.'" *Id.* The Court further held that it was likely that "the statute requires an assessment of the military's ability to execute the laws" because "it likely applies only where the military could legally execute the laws," but the Court also noted that "[s]uch circumstances are exceptional." *Id.* Accordingly, the Court found that "the Government has not carried its burden to show that § 12406(3) permits the President to federalize the Guard in the exercise of inherent authority to protect federal personnel and property in Illinois." *Id.*

On December 31, President Trump announced that all National Guardsmen were being removed from Chicago, Los Angeles, and Portland, stating:

> We are removing the National Guard from Chicago, Los Angeles, and Portland, despite the fact that CRIME has been greatly reduced by having these great Patriots in those cities, and ONLY by that fact. Portland, Los Angeles, and Chicago were GONE if it weren't for the Federal Government stepping in. We will come back, perhaps in a much different and stronger form, when crime begins to soar again - Only a question of time! It is hard to believe that these Democrat Mayors and Governors, all of whom are greatly incompetent, would want us to leave, especially considering the great progress that has been made??? President DJT

*See* Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 31, 2025, 3:55 p.m.), https://truthsocial.com/@realDonaldTrump/posts/115816171466225987,

https://perma.cc/4T2D-8JCR [hereinafter "12/31/25 Truth Social Post"]. On January 6, 2026, the Department of War's U.S. Northern Command announced that "[a]ll Title 10 troops in Portland, Los

Angeles, and Chicago are conducting demobilizing activities," and on January 21, it confirmed that demobilizing was complete. USNORTHCOM, Federal Protection Mission, https://www.northcom.mil/Missions/Homeland-Defense/Federal-Protection-Mission/, https://perma.cc/5FZ8-Z8SN.

## LEGAL STANDARD

Federal courts possess jurisdiction to resolve "[c]ases" and "[c]ontroversies" only. U.S. Const. art. III, § 2, cl. 1. Article III limits "federal court jurisdiction . . . to actual, ongoing controversies." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007) (citation omitted). An actual controversy must exist "at all stages of review," *Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted), and a plaintiff must have a "requisite personal interest" from the commencement of the litigation until its conclusion. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Absent a case or controversy, "courts have 'no business' deciding legal disputes or expounding on law." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (citation omitted). Thus, when a case "becomes moot at any point during the proceedings," it is "outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018). In other words, "[o]nce a plaintiff's entire demand is satisfied, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under [Federal Rule of Civil Procedure] 12(b)(1), because he has no remaining stake." *St. John's*, 502 F.3d at 626 (citation omitted).

Courts examine mootness under Rule 12(b)(1) because "it is elementary that a court cannot render a judgment in a case which it has no power to entertain." *Consol. Paving, Inc. v. Cnty. of Peoria*, No. 10-CV-1045, 2012 WL 13001935, at *3 (C.D. Ill. Aug. 28, 2012) (citation omitted). When considering a Rule 12(b)(1) motion, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Watchdogs v. U.S. Army Corps of Eng'rs*, No. 22-CV-1386, 2023

WL 12144748, at *3 (C.D. Ill. June 5, 2023) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

## ARGUMENT

## I.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE CASE IS MOOT.

### A.   The Case Is Moot Because No Members of the Illinois National Guard Remain Federalized, and No Members of Any State's National Guard Remain Deployed in Illinois, for the Federal Protection Mission.

This case is now moot because no members of any state's National Guard remain deployed in Illinois, and all members of the Illinois National Guard previously federalized for the Federal Protection Mission have been de-mobilized. A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Already*, 568 U.S. at 91 (same). That is true when an intervening event "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 655 (1895)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 568 U.S. at 91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)); *cf. Princeton University v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) (new policy superseding the challenged one made "the issue of the validity of the old regulation [ ] moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law'" (citation omitted)). Said another way, mootness is "the doctrine of standing set in a time frame; that is, the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013) (citation modified) (citations omitted).

Plaintiffs' complaint challenges the President's October 4, 2025, federalization of Illinois's National Guard and the Secretary of War's deployment of any state's National Guard troops in Illinois also in October 2025 (including possibly any renewals). Specifically, the Complaint asks the Court to enjoin Secretary Hegseth's October 4 order (which Plaintiffs call "the Federalization Order"), his October 5 order (which Plaintiffs call "the Texas Mobilization Order") and "any similar orders" without the consent of the state's governor. *See* Compl. at 67 (Prayer for Relief). They also seek a declaration that those challenged orders are unlawful. *Id.*

But any controversy concerning those orders is now moot because the challenged federalization and deployment have ended. That means that it is now "impossible for a court to grant any effectual relief whatever" to Plaintiffs. *Chafin*, 568 U.S. at 172. Indeed, when a complaining party has secured "all the relief he might have won in [the litigation]," "a federal court must dismiss the case as moot" to prevent courts from "tak[ing] up hypothetical questions that pique a party's curiosity or their own." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Because Plaintiffs cannot "obtain some relief from the court" due to "factual developments" that happened in the interim, the case is moot. *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 674 (7th Cir. 2019); *see also Honig v. Students of Cal. Sch. for the Blind*, 471 U.S. 148, 149 (1985) ("No order of this Court could affect the parties' rights with respect to the injunction we are called upon to review.").

It does not matter if Plaintiffs "vehemently . . . continue to dispute the lawfulness of the conduct that precipitated the lawsuit"; the fact remains that the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already*, 568 U.S. at 91. If Plaintiffs were to bring their case now when there is no federalization of the Illinois National Guard or deployment to the state under 10 U.S.C. § 12406, there is no question that the case would be dismissed for lack of Article III standing. The same logic applies for mootness: There is no longer a case or

controversy, so the case is moot. *See Milwaukee Police*, 708 F.3d at 930 (case was "unquestionably moot" when plaintiffs could not demonstrate standing at the time of the lawsuit's dismissal).

Plaintiffs challenge discrete governmental acts that have ceased. The Supreme Court has made clear that past exposure to allegedly unlawful conduct does not, by itself, establish Article III standing to seek prospective injunctive relief absent a real and immediate threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102-06 (1983). A plaintiff must show a "real and immediate" threat of future injury as opposed to a "conjectural" or "hypothetical" possibility of recurrence. *Id.* at 101-02; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (to establish injury in fact under Article III, the "threatened injury must be 'certainly impending'"); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (holding that the threatened injury is "too remote" and "conjectural" to satisfy Article III if the "prospect of future injury rests on the likelihood" of hypothetical future prosecutions). That standard is not met because any future federalization or deployment of the National Guard forces or the military would depend on new factual predicates, new statutory findings, and compliance with the Supreme Court's interpretation of 10 U.S.C. § 12406. Because Plaintiffs lack Article III standing to seek prospective relief directed at hypothetical future conduct, that request does not prevent this case from becoming moot.

### B. No Exception to Mootness Applies.

There are two exceptions to mootness: (1) when the challenged conduct is "capable of repetition, yet evading review"; and (2) when a defendant voluntarily ceases its conduct and the challenged conduct can reasonably be expected to recur. *See Friends of the Earth*, 528 U.S. at 190 (citation omitted). Neither exception applies.

#### 1. The "capable of repetition, yet evading review" exception is inapplicable.

The "capable of repetition, yet evading review" exception applies only in "exceptional situations," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citation omitted), and only when "(1) the challenged

action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Here, neither requirement is met.

*First*, this exception applies in limited circumstances—such as a labor strike or election campaign, *see Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 126-27 (1974) (labor strike); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (election campaign)—that are too transient to receive judicial review. The Seventh Circuit has recognized that this exception does not apply where a plaintiff is able to seek judicial review through a request for emergency injunctive relief. *See Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 730 (7th Cir. 2006) (refusing to apply the exception when "judicial review well might have been possible" if the plaintiff "sought a preliminary injunction"); *see also Minnesota Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999) (exception does not apply when a party chose not to appeal a denial of its preliminary injunction or seek an expedited appeal). And here, the challenged act was not too short such that it could evade judicial review. Indeed, this Court, the Seventh Circuit, and the Supreme Court all considered the issues raised in this case—albeit on an expedited basis—such that they immediately addressed Plaintiffs' alleged injury.

*Second*, there is no "reasonable expectation" that Plaintiffs will be "subjected to the same action again." *Weinstein*, 423 U.S. at 149. A reasonable expectation is "more than a mere physical or theoretical possibility." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). There must be a "demonstrated probability that the same controversy will recur involving the same complaining party." *Id.* (quoting *Weinstein*, 423 U.S. at 149). Here, there is no reasonable expectation that the same controversy will recur. Plaintiffs challenge completed governmental acts as opposed to any ongoing policy or regulation that continues to govern future conduct. *See Central Soya Co. v. Consolidated Rail Corp.*, 614 F.2d 684, 689-90 (7th Cir. 1980); *cf. Super Tire*, 416 U.S. at 124-25 (to maintain a live case in challenging a government policy, plaintiffs must challenge a "fixed and definite" policy that is "immediately and directly injurious" to

8

their interests and "not contingent upon executive discretion"). The federalization and deployment of National Guard pursuant to the October 4 and October 5 orders were discrete, fact-specific responses to then-existing conditions and ceased entirely once the Guard was demobilized. All of Plaintiffs' alleged harm relates to those past actions, *see* Compl. ¶¶ 183-210, which have now ended. *See* USNORTHCOM, Federal Protection Mission, https://www.northcom.mil/Missions/Homeland-Defense/Federal-Protection-Mission/, https://perma.cc/5FZ8-Z8SN (noting that "[a]ll Title 10 troops in Portland, Los Angeles, and Chicago have completed demobilizing activities").

To be sure, the President's December 31 post suggested that military servicemembers could be deployed again in the future, but nothing about the post suggests they would be deployed based on the 2025 events that preceded last year's deployment or under the October 4 and 5 orders. Nor does the post suggest future deployments would be based on Section 12406(2) and (3). On the contrary, the post suggests that a future deployment would take "a much different . . . form." 12/31/25 Truth Social Post. It is not reasonable to think that 2025's discrete actions would recur under the same factual and legal conditions precipitating the October 4 and 5 orders, particularly given the necessarily speculative nature of future factual conditions that would warrant any deployment and the legal authority the Executive may invoke. *See Central Soya*, 614 F.2d at 689 (holding case moot where any future recurrence would require "a chain of speculation" and mere possibility is "inadequate to support an assertion of federal jurisdiction"; noting that "[i]n order for the requirements of Article III to be satisfied, it is not enough . . . that a federal court may again be called upon to decide the legal issue raised in this litigation"); *Brach v. Newsom*, 38 F.4th 6, 9, 12-15 (9th Cir. 2022) (en banc) (rejecting capable of repetition exception where challenged executive orders were rescinded, intervening factual and legal developments "fundamentally altered" the dispute, and any future recurrence was "too remote").

Because the prospect of recurrence in this case rests on "a chain of speculation" rather than a reasonable expectation of recurrence, *Central Soya*, 614 F.2d at 689, and because intervening legal developments have fundamentally altered the landscape, *see Brach*, 38 F.4th at 12-15, any alleged repetition is too remote to establish Article III case or controversy.

### 2.     The voluntary cessation exception is inapplicable.

The voluntary cessation exception to the mootness doctrine likewise does not apply. The exception prevents defendants from mooting a case through temporary suspension of the challenged conduct, while remaining free to "return to [their] old ways." *Friends of the Earth*, 528 U.S. at 189-90 (citation omitted). That is, it targets defendants who "might suspend [the] challenged conduct after being sued, win dismissal, and later pick up where [the defendant] left off." *Fikre*, 601 U.S. at 241. The Seventh Circuit has made clear, however, that while "the general principle that a defendant's voluntary cessation of challenged conduct will not render a case moot" is "the appropriate standard for cases between private parties, [ ] this is not the view [the court] ha[s] taken toward acts of voluntary cessation by government officials." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003). Rather, "[w]hen the defendants are public officials [the court] place[s] greater stock in their acts of self-correction, so long as they appear genuine." *Id.* (citation modified); *see also Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) ("We note additionally that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties."). The D.C. Circuit has also stated that the voluntary cessation exception "does not apply automatically whenever the prospect of mootness is raised by a party's voluntary conduct" and that "courts have declined to apply the doctrine when the facts do not suggest any arguable manipulation of [the court's jurisdiction]." *Samma v. Dep't of Def.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (citation omitted); *see also Alaska v. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021) ("The established law of this circuit is that the voluntary-cessation exception to mootness has no play when

the agency did not act in order to avoid litigation." (citation modified)). In any event, the exception is inapplicable when "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189; *see United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (case is moot when "there is no reasonable expectation that the wrong will be repeated" (citation omitted)).

To start, the voluntary cessation exception "has no application here" because there is no evidence that the deployment and federalization ended to "manipulate the court's jurisdiction" and "to strategically avoid judicial review by ceasing [the] challenged activity." *Samma*, 136 F.4th at 1114. Any argument otherwise is belied by the fact that Defendants sought expedited review of this Court's decision relating to those actions. Defendants vigorously defended the legality of the orders issued on October 4 and 5 and appealed this Court's October 9 order to the Seventh Circuit, while seeking administrative stays and stays in both the Seventh Circuit and the Supreme Court. It was only upon the Supreme Court's decision that "regular forces" likely means "regular military"—a finding with which Defendants disagreed—that Defendants demobilized the National Guard and ended the deployment for the Federal Protection Mission in not only Illinois but also California and Oregon. USNORTHCOM, Federal Protection Mission, https://www.northcom.mil/Missions/Homeland-Defense/Federal-Protection-Mission/, https://perma.cc/5FZ8-Z8SN. Defendants recognize that the Supreme Court's decision concerns only interim relief and is not necessarily conclusive as to the merits, but regardless of the decision's procedural posture, its reasoning carries precedential weight in future cases. *See Ramos v. Louisiana*, 590 U.S. 83, 102-03 (2020) (stating that regardless of a decision's procedural posture, its "reasoning—its *ratio decidendi*"—carries precedential weight in "future cases"); *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663-65 (2025) ("*NIH*") (Gorsuch, J., concurring in part and dissenting in part) (district courts are "duty bound" to follow Supreme Court orders, even when they involve "probabilistic holdings"); *see also Trump v. Boyle*, 145 S. Ct. 2653, 2654

(2025) (interim orders in like cases "inform how a court should exercise its equitable discretion in like cases").

In addition, "it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to recur." *Already*, 568 U.S. at 94-95. Again, Plaintiffs' claims are inextricably intertwined with the 2025 facts that preceded the October deployment. As the Seventh Circuit recognized, in this case, "[t]he issues presented are necessarily fact bound." *Illinois v. Trump*, 155 F.4th 929, 941 (7th Cir. 2025). The parties have never disputed that Section 12406 grants the President the power to federalize Guardsmen even over a state's objection under the right conditions. Instead, the parties contested whether at the time of the October 2025 deployment there existed those conditions. In reviewing this Court's temporary restraining order, the Seventh Circuit remarked that "events could transpire that satisfy one of § 12406's factual predicates." *Illinois*, 155 F.4th at 941. So any future federalizations and deployments would necessarily involve different factual scenarios that would raise new questions about whether those discrete actions comply with the requisite factual predicate for invoking § 12406.

Moreover, the Supreme Court's stay decision has materially altered Defendants' understanding of Section 12406(3). *Cf. Princeton University*, 455 U.S. at 103 (holding that where intervening developments render the challenged regulation "no longer in force," "the issue of the validity of the old regulation is moot" because the case has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law" (citation omitted)). The Supreme Court "conclude[d] that the term 'regular forces in § 12406(3) likely refers to the regular forces of the United States military," which "means that to call the Guard into active federal service under § 12406(3), the President must be 'unable' *with the regular military* 'to execute the laws of the United States.'" *Trump*, 146 S. Ct. at 434 (quoting § 12406(3)). The Supreme Court's reasoning binds this Court should Defendants federalize the National Guard based on the same factual events that precipitated the October 4 and 5 orders, and its reasoning will also significantly guide a lower

12

court's analysis of any future deployment that relies on § 12406(3). In any event, it is speculative what the outcome of any such future assessment would be, because at a minimum, the alleged unlawful conduct would not be the same.

Any future federalization based on Section 12406 would require a different statutory analysis under the Supreme Court's interpretation of § 12406(3) and could not proceed on the same facts as presented in this case. *See Trump*, 146 S. Ct. at 434. Accordingly, there is no possibility of recurrence of the same controversy. *See Already*, 568 U.S. at 91 (holding the case moot where subsequent developments made it "absolutely clear" that the allegedly wrongful conduct "could not reasonably be expected to recur"); *Fikre*, 601 U.S. at 241 (case is moot when intervening circumstances make clear that there is "no reasonable expectation" that the defendant will "return to its old ways"); *Brach*, 38 F.4th at 14 (case moot when factual circumstances changed relating to COVID-19 recommendations after the state ordered schools to reopen).

The President's statement on social media does not change that result. When announcing that the National Guard would be "remov[ed] . . . from Chicago, Los Angeles, and Portland," the President also said, "We will come back, perhaps in a much different and stronger form, when crime begins to soar again – Only a question of time!" 12/31/25 Truth Social Post. Again, that statement merely confirms the possibility of a "*different*" form of deployment in the future based on future events. The possibility of such a hypothetical future deployment—one that also cannot contravene the Supreme Court's reasoning in the stay decision—is a far cry from a reasonable expectation of recurrence of the current controversy, which is inextricably intertwined with events that occurred in 2025.

13

## CONCLUSION

The Court should dismiss the Complaint with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because the case is moot.

Dated: February 6, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

ALEXANDER K. HAAS
Director
Federal Programs Branch

JEAN LIN
Special Litigation Counsel

/s/ *J. Stephen Tagert*
MICHAEL J. GERARDI
Senior Trial Counsel
CHRISTOPHER D. EDELMAN
Senior Counsel
KATHLEEN C. JACOBS
J. STEPHEN TAGERT
KIAN K. AZIMPOOR
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-5486
Email: stephen.tagert@usdoj.gov

*Counsel for Defendants*