# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| STATE OF ILLINOIS and the CITY OF CHICAGO,<br><br>                              *Plaintiffs*,<br><br>                    v.<br><br>DONALD J. TRUMP, *et al.*, in their official capacities,<br><br>                              *Defendants.* | Case No. 1:25-cv-12174<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................................1

ARGUMENT..................................................................................................................................................3

I.       THE CASE IS MOOT AND PLAINTIFFS' REQUESTS FOR DECLARATORY
        AND INJUNCTIVE RELIEF DO NOT KEEP THE CASE LIVE.......................................3

II.     THE VOLUNTARY CESSATION EXCEPTION DOES NOT APPLY..............................7

        A.      It Is Absolutely Clear that the Challenged Federalization and Deployments
               Have Ended and That the Orders Authorizing Those Actions Will Not Be
               Enforced. ...............................................................................................................................8

        B.      The Supreme Court's Stay Order Makes It Absolutely Clear that the Same
               Orders Will Not Be Utilized. ..............................................................................................9

        C.      Defendants, as Government Officials, Are Accorded Greater Deference Than
               Private Parties........................................................................................................................11

CONCLUSION............................................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Alaska v. U.S. Dep't of Agric.*,
17 F.4th 1224 (D.C. Cir. 2021) ...................................................................................7

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013).................................................................................................. 1, 5

*Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*,
1 F.4th 180 (4th Cir. 2021) ......................................................................................7

*California v. Texas*,
593 U.S. 659 (2021)...................................................................................................3

*City of Houston v. Dep't of Hous. & Urb. Dev.*,
24 F.3d 1421 (D.C. Cir. 1994) ............................................................................. 4, 5

*E.D. v. Noblesville Sch. Dist.*,
No. 1:21-CV-03075-SEB-TAB, 2024 WL 1140919 (S.D. Ind. Mar. 15, 2024)....................................4

*Elim Romanian Pentecostal Church v. Pritzker*,
962 F.3d 341 (7th Cir. 2021).................................................................................12

*Evers v. Astrue*,
536 F.3d 651 (7th Cir. 2008)...................................................................................9

*FBI v. Fikre*,
601 U.S. 234 (2024)............................................................................................... 2, 7

*Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*,
326 F.3d 924 (7th Cir. 2003)...........................................................................*passim*

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...................................................................................................9

*Harris v. City of Houston*,
151 F.3d 186 (5th Cir. 1998)....................................................................................4

*Hummel v. St. Joseph Cnty. Bd. of Comm'rs*,
817 F.3d 1010 (7th Cir. 2016) ...............................................................................13

*Illinois v. Trump*,
155 F.4th 929 (7th Cir. 2025) ........................................................................... 1, 6, 8

*Magnuson v. City of Hickory Hills*,
933 F.2d 562 (7th Cir. 1991)..................................................................................10

ii

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC,*
  571 U.S. 191 (2014)................................................................................................3

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs,*
  708 F.3d 921 (7th Cir. 2013)..................................................................................3

*N.Y. Civil Liberties Union v. Grandeau,*
  528 F.3d 122 (2d Cir. 2008) ...................................................................................4

*Pub. Citizen, Inc. v. FERC,*
  92 F.4th 1124 (D.C. Cir. 2024) ..............................................................................7

*Ragsdale v. Turnock,*
  841 F.2d 1358, 1364-65 (7th Cir. 1988) ......................................................... 9-10, 11, 13

*Simic v. City of Chicago,*
  851 F.3d 734 (7th Cir. 2017)..................................................................................3

*Super Tire Eng'g Co. v. McCorkle,*
  416 U.S. 115 (1974)..........................................................................................3, 4, 5

*Sweeney v. Raoul,*
  990 F.3d 555 (7th Cir. 2021)..................................................................................9

*The Church of Our Lord & Savior Jesus Christ v. City of Markham,*
  913 F.3d 670 (7th Cir. 2019)..................................................................................9

*Trump v. Illinois,*
  146 S. Ct. 432 (2025) .............................................................................................1

*UWM Student Ass'n v. Lovell,*
  888 F.3d 854 (7th Cir. 2018)........................................................................1, 2, 3, 5

*Wis. Cent., Ltd. v. Shannon,*
  539 F.3d 751 (7th Cir. 2008)..................................................................................9

### Statutes

10 U.S.C. § 12406(2)..................................................................................................10

10 U.S.C. § 12406(3)....................................................................................................1

### Rules

Fed. R. Civ. P. 12(b)(1) .............................................................................................13

### Other Authorities

Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 31, 2025, 3:55 PM),
  https://truthsocial.com/@realDonaldTrump/posts/115816171466225987 .....................10, 12-13

U.S. Northern Command, Federal Protection Mission,
https://perma.cc/5FZ8-Z8SN ................................................................................................... 5, 6

iv

**INTRODUCTION**

Defendants demonstrated in their opening brief that this case is moot because the challenged federalization of the Illinois National Guard and deployment of any National Guardsmen in Illinois has ended. There is no chance that the same controversy will happen again because any future deployment of the National Guard to Illinois would need to adhere to the Supreme Court's determination that the term "regular forces" in 10 U.S.C. § 12406(3)—the statutory provision the President invoked for the October 2025 federalization and deployment—"likely refers to the regular forces of the United States military." *Trump v. Illinois*, 146 S. Ct. 432, 434 (2025). What is more, as the Seventh Circuit recognized in this case, "[t]he issues presented are necessarily fact bound," and "events could transpire that satisfy one of § 12406's factual predicates." *Illinois v. Trump*, 155 F.4th 929, 941 (7th Cir. 2025). It is simply too speculative to know what future events may arise and what legal authority the Executive may invoke at that time.

What is clear is that the challenged October 4 and 5, 2025 orders (or even the December 2025 memorandum reflecting an earlier extension) would not be used to federalize and deploy any National Guard. Because the parties' dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights," *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted), Plaintiffs' request for "ongoing protection against unlawful troop deployments," Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss at 7 ("Pls.' Opp'n"), ECF No. 139, is plainly improper under Article III, and Plaintiffs' requested "protection" is nothing more than an invitation for the Court to issue an advisory opinion. Nor can this case be kept alive by Plaintiffs' request for declaratory relief. Plaintiffs challenge discrete, completed actions, not an "ongoing policy [that] may continue, even after the specific offense precipitating the case has become moot." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 861 (7th Cir. 2018) (citation omitted). The latter, as the Seventh Circuit has held, is a "special rule" that "rarely"

applies. *Id.* Plaintiffs do not purport to rely on this "special rule," and it does not apply here because Plaintiffs do not identify any such policy. In fact, there is none.

Plaintiffs do not argue that the "capable of repetition, yet evading review" exception to mootness applies. Instead, Plaintiffs rely on only the voluntary cessation exception. But that exception does not apply because it is absolutely clear that Defendants ended the challenged actions "for good," *contra* Pls.' Opp'n at 10, and will not enforce the orders authorizing those actions. This is not a case where a defendant "suspend[ed] its challenged conduct after being sued, w[on] dismissal, and later pick[ed] up where it left off." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Defendants vigorously defended the challenged actions, and it was only after the Supreme Court issued its stay decision that they ended the challenged conduct. Plaintiffs' suggestion that the Supreme Court's ruling is irrelevant to the mootness analysis makes no sense. Moreover, the Seventh Circuit has made clear that "the general principle that a defendant's voluntar[y] cessation of challenged conduct will not render a case moot" is inapplicable to "acts of voluntary cessation by government officials." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003). Government officials receive "more solicitude" than private parties, and their cessation "renders a case moot, unless there is evidence creating a reasonable expectation of reoccurrence." *Id.* at 930. Here, there is simply no concrete evidence that Defendants intend to reinstate the same orders or resume the same conduct under the same prior factual and legal conditions. Plaintiffs' speculation does not suffice, and their suggestion that Defendants must go through the futile exercise of rescinding prior orders has no basis in the law.

The Court should dismiss the case as moot.

2

**ARGUMENT**

### I. THE CASE IS MOOT AND PLAINTIFFS' REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF DO NOT KEEP THE CASE LIVE.

Despite the fact that the challenged federalization and deployment have ended, Plaintiffs argue that there remains a live controversy because of their requests for declaratory and injunctive relief. Pls.' Opp'n at 9. That argument is circular and incorrect. Plaintiffs cannot keep a case live merely by relying on the fact that they are seeking some relief; instead, they must explain how the requested relief will redress some continuing harm and is not merely advisory.

A claim for declaratory relief is moot when "it c[an] do the plaintiffs no practical good." *See UWM Student Ass'n*, 888 F.3d at 860. The same Article III case or controversy requirement applies to requests for declaratory relief. *See Simic v. City of Chicago*, 851 F.3d 734, 740 (7th Cir. 2017) (determining "whether a claim for declaratory relief presents a case or controversy under Article III of the Constitution"); c*f. California v. Texas*, 593 U.S. 659, 673 (2021) (declaratory relief is "the very kind of relief that cannot alone supply jurisdiction otherwise absent"); *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (a court looks to "the nature of the threatened action in the absence of the declaratory judgment suit" to determine whether jurisdiction exists). Plaintiffs no longer have an ongoing injury in fact that declaratory relief could redress.

Nor does this case fall within the "special rule" that "rarely" applies when a request for declaratory relief can keep a case live—*i.e.*, when "disputes over an ongoing policy may continue, even after the specific offense precipitating the suit has become moot." *UWM Student Ass'n*, 888 F.3d at 861 (citation omitted). Plaintiffs nowhere argue that this special rule applies. Nor could they because they do not challenge an ongoing policy that "by its continuing and brooding presence, casts . . . a substantial adverse effect on the interests of the petitioning parties" and that is "contingent upon executive discretion." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122-24 (1974); *see Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 930–33 (7th Cir. 2013) (to fall within this mootness

3

exception, there must be the "kind of lasting effects discussed in *Super Tire*"). *Super Tire* involved a company's challenge to a state's regulations providing welfare benefits to striking workers. The company sought (1) an injunction that would prevent the state from using its funds for those benefits, and (2) a declaratory judgment that federal law preempted those regulations. 416 U.S. at 117-20. The strike ended during the district court proceedings. The Supreme Court found that the claim for declaratory relief remained live because "[i]t is sufficient . . . that the litigant show the existence of an immediate and definite governmental action or *policy* that has adversely affected and continues to affect a present interest," *id.* at 125-26 (emphasis added), and "the state action [wa]s not at all contingent" but was "immediately and directly injurious to the corporate petitioners' economic positions." *Id.* at 125.

Courts following *Super Tire* have held that a request for declaratory relief may sustain a suit if it challenges an ongoing fixed and definite *policy*—instead of a discrete *action* that occurred in the past—that continues to injure the plaintiff. *See, e.g.*, *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1428 (D.C. Cir. 1994) ("It is well-established that if a plaintiff challenges both a specific agency action and the *policy* that underlies that action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot."); *Harris v. City of Houston,* 151 F.3d 186, 191 n.5 (5th Cir. 1998) ("Requests for declaratory relief may sustain a suit only when the claims challenge some ongoing underlying policy rather than merely attacking an isolated action." (citation modified)); *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 128-30 (2d Cir. 2008) (case not moot, notwithstanding the agency's withdrawal of its demand for information about the particular billboard, because the complaint challenged an alleged ongoing policy of requiring reporting of certain non-lobbying advocacy activities); *E.D. v. Noblesville Sch. Dist.*, No. 1:21-CV-03075-SEB-TAB, 2024 WL 1140919, at *19 (S.D. Ind. Mar. 15, 2024) (finding that *Super Tire* did not apply when a student organization was temporarily suspended before being reinstated and declaratory relief would

do nothing more than "secure emotional satisfaction" (citation omitted)), *aff'd sub nom. E.D. ex rel. Duell v. Noblesville Sch. Dist.*, 151 F.4th 907 (7th Cir. 2025), *petition for cert docketed*, No. 25-906 (U.S. Jan. 28, 2026).

Instead of challenging a "fixed and definite" policy that is "immediately and directly injurious" to their interests and "not contingent upon executive discretion." *Super Tire*, 416 U.S. at 124-125, Plaintiffs challenge specific actions by Defendants to federalize and deploy the National Guard in Illinois in October 2025, and all of Plaintiffs' alleged harm relates to those past actions, Compl. ¶¶ 183-210, ECF No. 1, which have now ceased. *See* U.S. Northern Command, Federal Protection Mission, https://perma.cc/5FZ8-Z8SN ("USNORTHCOM Fed. Prot. Mission") (noting that "[a]ll Title 10 troops in Portland, Los Angeles, and Chicago have completed demobilizing activities"). The same is true of the challenge—not made in the Complaint—to the December 2025 order reflecting an earlier extension of the October orders. Pls.' Opp'n at 8. While Plaintiffs would like to have the challenged orders rescinded (although at times they also argue that even rescission would not suffice *see* Pls.' Opp'n at 9), and "vehemently . . . continue to dispute the lawfulness of the conduct that precipitated the lawsuit," *Already*, 568 U.S. at 91, the fact remains that the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* (citation omitted). Any declaration here simply "c[an] do the plaintiffs no practical good" because Plaintiffs are no longer suffering any alleged harm and any declaratory relief is "too late." *See UWM Student Ass'n*, 888 F.3d at 860-61; *id.* at 862 (holding declaratory relief moot because a declaration would not "undo" defendants' past actions). Plaintiffs' request for declaratory relief is therefore moot. *See City of Houston*, 24 F.3d at 1429.

Plaintiffs' request for permanent injunctive relief fares no better in keeping this case live because there is nothing left to enjoin. Plaintiffs seek to "enjoin Defendants' federalization and deployment of the National Guard of the United States, any state National Guard, or deployment of

5

the U.S. military" pursuant to the October 4 and 5 orders "and any similar order effectuating the mobilization of the National Guard of the United States, any state National Guard, or deployment of the U.S. military in Illinois over the objection of the Governor of Illinois." *See* Compl., Prayer for Relief ¶¶ B-C. But there is nothing left to enjoin for the October 4 and 5 orders, as the relevant federalization and deployments under those orders have ended. The same is true for the December 22, 2025 memorandum reflecting earlier extension orders, which Plaintiffs raise for the first time in their opposition. Pls.' Opp'n at 4-8. Although that order reflected a November extension of the federalization of the Illinois National Guard through April 15, 2026, any federalization under that order ended once demobilization activities were completed. USNORTHCOM Fed. Prot. Mission. And Plaintiffs have no Article III standing to seek to enjoin "similar order[s]"—or as they phrased it, orders involving "deployment of the U.S. military in Illinois," Compl., Prayer for Relief ¶¶ A-D—because any such deployment is speculative and "necessarily fact bound," *Illinois*, 155 F.4th at 941, and more importantly, would require an examination of the legal authority invoked as the basis for those orders. Indeed, Section 12406—the statutory provision at issue in this case—applies only to the National Guard, not the U.S. military.

Further, Plaintiffs argue that the case is not moot because the events that occurred in 2025 could hypothetically be used for future orders and they also quibble with the fact that the October orders have not been rescinded. *See* Pls.' Opp'n at 8-9. But their arguments fail. All potential future orders are entirely speculative and hypothetical, including whether the 2025 events would be used to support those future orders. And it is absolutely clear, as already demonstrated, that the 2025 orders will not be enforced.

In short, the case is moot, and Plaintiffs' invocation of declaratory and injunctive relief cannot revive the case.

6

## II.    THE VOLUNTARY CESSATION EXCEPTION DOES NOT APPLY.

In the opening brief, Defendants argued that the voluntary cessation exception does not apply because there is no evidence that Defendants sought to manipulate the court's jurisdiction or avoid judicial review. *See* Defs.' Memo. in Support of Their Mot. to Dismiss, ECF No. 130 at 11. Notably, Plaintiffs do not dispute this argument, effectively conceding that the exception is inapplicable because the exception is designed precisely to target such manipulation. *See, e.g.*, *Fikre*, 601 U.S. at 241 ("Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat this cycle as necessary until it achieves all of its allegedly 'unlawful ends.'" (citation omitted)); *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) ("The heightened voluntary-cessation standard is grounded in concerns that a party may be manipulating the judicial process through the false pretense of single handedly ending a dispute." (citation omitted)); *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1228 (D.C. Cir. 2021) (explaining that the doctrine exists "to prevent manipulation of the judicial process"); *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 188 (4th Cir. 2021) (stating that "there is no whiff of any of the opportunism, on the part of the defendant, that typically supports invocations of mootness exceptions where voluntary cessation of the challenged conduct is at issue").

Plaintiffs nevertheless argue that the voluntary cessation exception to the mootness doctrine applies because (1) it is not "absolutely clear that unlawful troop deployments are over for good." Pls.' Opp'n at 10-12; (2) the Supreme Court's interim order in this case does not defeat application of the voluntary cessation doctrine, *id.* at 12-14, and (3) Defendants, despite being government officials, receive no special solicitude because they have not definitively renounced "future troop deployments," *id.* at 14-15. Each argument is wrong.

7

**A.** **It Is Absolutely Clear that the Challenged Federalization and Deployments Have Ended and That the Orders Authorizing Those Actions Will Not Be Enforced.**

Plaintiffs argue that there could be "future unlawful National Guard federalization and troop deployments in Illinois," including "the possibility of a future troop deployment based on the same legal authority." Pls.' Opp'n at 10-11. In support, Plaintiffs cite a few statements made by the President in December 2025 and January 2026. *Id.* at 10. They note his December 31, 2025 social media post stating, with respect to Chicago, Los Angeles, and Portland that "[w]e will come back, perhaps in a much different and stronger form, when crime begins to soar again." *Id.* at 10; *see also* Decl. of Michael M. Tresnowski ("Tresnowski Decl."), ¶¶ 7-9, ECF No. 139-2. They also cite the President's later statements that he thought "a town looks better when you have military people" and that "we'll go in [to Chicago] at the appropriate time." Pls.' Opp'n at 10-11; *see also* Tresnowski Decl. ¶¶ 11-12.

But those statements say nothing about the relevant orders at issue here, which relate only to the protection of federal personnel and property. *See* Oct. 4, 2025, SoW Memo at 2, ECF No. 13-3; *accord* Decl. of Bria Scudder ¶ 5, ECF No. 139-1. They confirm, at most, the possibility of a "*different*" form of deployment in the future based on currently unknown future events. That is a far cry from showing that the controversy—which is inextricably intertwined with events that occurred in 2025 involving a legal authority governing only the National Guard—will repeat. Again, as the Seventh Circuit recognized, any invocation of Section 12406 is "necessarily fact bound," and future events could arise that satisfy one of Section 12406's predicates. *Illinois*, 155 F.4th at 941. Of course, the Executive could invoke an entirely different legal authority than Section 12406.

At bottom, Plaintiffs are asking the Court for an advisory opinion to provide "ongoing protection" by enjoining hypothetical future "troop deployments," without knowing whether those "troop[s]" include only National Guardsmen or the U.S. military and without knowing the factual circumstances of those hypothetical deployments. Pls.' Opp'n at 7, 9. But the Court has no authority

8

to render such an advisory opinion. *See, e.g., Sweeney v. Raoul*, 990 F.3d 555, 560-61 (7th Cir. 2021) (holding that courts may not resolve important legal questions in the absence of a concrete and particularized dispute and emphasizing that ripeness prevents courts from "entangling themselves in abstract disagreements" (citation omitted)); *Evers v. Astrue*, 536 F.3d 651, 661-62 (7th Cir. 2008) (explaining that claims resting on "contingent future events that may not occur as anticipated, or indeed may not occur at all" are unripe (citation omitted)); *The Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019) (explaining that ripeness exists to avoid premature adjudication of claims premised on "uncertain or contingent events"); *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (explaining that ripeness implicates subject matter jurisdiction when adjudication would risk an advisory opinion). The only federalization and deployment that did occur has ended, and Plaintiffs provide no facts demonstrating otherwise.

**B.      The Supreme Court's Stay Order Makes It Absolutely Clear that the Same Orders Will Not Be Used.**

Plaintiffs next argue that Defendants' "unsuccessful pursuit of an interlocutory appeal" should not factor into the voluntary cessation analysis. *See* Pls.' Opp'n at 12. Plaintiffs are wrong. In determining whether the voluntary cessation exception applies, the Court asks whether "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000). The changed legal landscape is clearly relevant to that determination. In *Federation of Advertising Industry Representatives*, for example, the Seventh Circuit found the case moot after the defendant repealed the challenged ordinance in light of intervening judicial decisions. The court did so because the defendant's effort to conform its conduct to those decisions did not create a reasonable expectation that it would reenact the challenged law. 326 F.3d at 930-31. And in *Ragsdale v. Turnock*, the Seventh Circuit held that Illinois's "non-publicized policy of non-enforcement" mooted the case because there was "no reasonable expectation that the putatively illegal conduct will be repeated, and there are no remaining effects of the alleged

9

violation." 841 F.2d 1358, 1364-65 (7th Cir. 1988). And even though Illinois had "not acted to remove or amend the statute and regulations," the Court reasoned that the voluntary cessation exception did not apply because "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." *Id.* at 1365-66; *see also Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991) (a city's cessation of sending threatening notices about turning off a person's water mooted the case).

Likewise, here, Defendants ended the challenged federalization and deployments after an intervening Supreme Court stay decision that materially altered their understanding of the governing law. Under Seventh Circuit precedent, that kind of governmental action in response to a legal development supports the conclusion that the challenged conduct couldn't reasonably be expected to recur. *See Fed'n of Advert. Indus. Representatives*, 326 F.3d at 930-31; *see also Ragsdale*, 841 F.2d at 1364-66.[1]

Relatedly, the Court asked whether the other rationale for the federalization and deployment—that "there is a rebellion or danger of a rebellion against the authority of the Government of the United States," *see* 10 U.S.C. § 12406(2)—"is still a live issue both under the facts and the law," and if so, how the case could be moot. Feb. 19, 2026 Tr. at 7:13-14, ECF No. 133. Defendants submit that there is not a live issue under the facts because the relevant federalization and deployment ended, and there is thus no live controversy. Plaintiffs also do not appear to contend that the rebellion rationale matters in terms of mootness, as they have proposed filing a motion for summary judgment based on the Supreme Court's decision on 12406(3) alone. *See id.* at 4:15-24. Even though Plaintiffs argue that "Defendants' insistence on continuing to press the 'rebellion rationale' is a strike against their

---

[1] Plaintiffs also argue that the fact that "Defendants point to no case holding that unsuccessful pursuit of an interlocutory appeal lessens their burden on mootness." Pls.' Opp'n at 12. But the specific posture of the case is irrelevant to the question of whether it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. That is absolutely clear here where an intervening Supreme Court stay order materially altered the parties' understanding of the legal framework.

10

mootness motion," Pls.' Opp'n at 14, they don't explain why. Indeed, their argument is really that "a citation change in a 'future federalization' order comes as cold comfort," *id.* at 13, which, once again, relates to possible hypothetical "troop deployments" rather than the facts at issue here. The presence of the second rationale thus does not prevent the case from becoming moot, but were the Court to find that the case was not moot for independent reasons, Defendants maintain that a full record would be needed before the Court could decide whether Defendants' invocation of § 12406(2) was proper as factual matter on summary judgment.

### C. Defendants, as Government Officials, Are Accorded Greater Deference Than Private Parties.

Finally, Plaintiffs argue that Defendants are entitled to no special solicitude as government officials because the orders were not formally rescinded and because Defendants have not shown a "genuine change of heart" regarding possible future deployments. Pls.' Opp'n at 15.

Neither argument has merit. *First*, Plaintiffs point to nothing demonstrating that the orders must be specifically rescinded, which would be a futile exercise since there were intervening instructions to defederalize the Illinois National Guard and end the deployment of all Guardsmen in Illinois. And the President publicly confirmed that change in course by stating, "We are removing the National Guard from Chicago, Los Angeles, and Portland . . . ." Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 31, 2025, 3:55 PM), https://truthsocial.com/@realDonaldTrump/posts/115816171466225987 ("12/31/25 Truth Social Post"). As discussed above, under the Seventh Circuit's decision in *Ragsdale*, the lack of rescission does not prevent the case from becoming moot, as long as there is no reasonable expectation that the putatively illegal conduct will be repeated and there were no remaining harmful effects. *See* 841 F.2d at 1364-66 (case moot because of Illinois's "non-publicized policy of non-enforcement" of the challenged statutes and regulations, even though those statutes and regulations were not revoked).

Plaintiffs compare this circumstance to *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341 (7th Cir. 2021), where the Court found the case not moot even though the challenged executive order limiting the size of public assemblies (including religious services) to ten persons to prevent the spread of COVID-19 was replaced by a new executive order removing the restriction. The court so held because the Illinois governor expressly reserved the option to reinstate the same restriction if COVID-19 began to get worse again in Illinois. *Id.* at 344-45. And the list of criteria for reverting back to the prior restriction (such as sustained rise in positive COVID-19 test results) showed that it was not "absolutely clear" that the challenged restriction would never be restored. *Id.* at 345. But there is no similar evidence here—only that there may be deployments in the future in a different form based on unspecified future events and that the purpose of such future deployment may or may not relate to the protection of federal personnel and property, which is the express purpose of the challenged orders here.

*Elim Romanian* actually supports Defendants' position for another reason: the governor's conduct was entirely voluntary—he issued a new executive order replacing the prior one, then claimed that action mooted the dispute. *Id.* at 344. But here, the change in action followed from the Supreme Court's decision that has precedential effect in the lower courts—not a voluntary decision of the President that signaled any attempt to manipulate the Court's jurisdiction.

*Second*, there is no requirement for Defendants to demonstrate a "genuine change of heart . . . regarding the use of the military in Chicago." Pls.' Opp'n at 15. Plaintiffs cite *Federation of Advertising Industry Representatives*, in which the Seventh Circuit stated that it "place[s] greater stock in [public officials'] acts of self-correction, so long as they appear to be genuine." 326 F.3d at 929 (citation omitted). The "act[] of self-correction" is obviously what must be genuine, which it is here, as demonstrated by the decision to withdraw the National Guard from Oregon and California in addition to Illinois. *See* 12/31/25 Truth Social Post. The Seventh Circuit also expressly rejected what Plaintiffs

are asking the Court to do now, to presume bad faith on the part of Defendants. *Fed'n of Advert. Indus. Representatives*, 326 F.3d at 929 (rejecting the request to "presum[e] that the City has acted in bad faith—harboring hidden motives to reenact the statute after we have dismissed the case—something we ordinarily do not presume"). As the Seventh Circuit has held, "[w]hen the defendant is a government actor, however, we ordinarily presume that the objectionable behavior will not recur." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1023 (7th Cir. 2016). That is true even when the government actor has a "non-publicized policy of non-enforcement" with no action taken to "remove or amend" any statutes or regulations. *See Ragsdale*, 841 F.2d at 1364-66. That presumption applies with full force here, and nothing rebuts it.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because the case is moot and no exception to mootness applies.

Dated: March 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

ALEXANDER K. HAAS
Director
Federal Programs Branch

JEAN LIN
Special Litigation Counsel

/s/ J. Stephen Tagert
J. STEPHEN TAGERT
KATHLEEN C. JACOBS
KIAN K. AZIMPOOR
Trial Attorneys

13

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-5486
Email: stephen.tagert@usdoj.gov

*Counsel for Defendants*

14